UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COMAIR LIMITED,<br><br>                    Plaintiff,<br><br>            v.<br><br>THE BOEING COMPANY, ET AL.,<br><br>                    Defendants. | CASE NO. C23-176 RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

## I.      INTRODUCTION

This matter is before the Court on Defendant Boeing's Motion to Dismiss. Dkt. #25. Plaintiff Comair Limited opposes. Dkt. #36.

Comair has sued Boeing for damages related to its purchase of Boeing's 737-8 aircraft (the "737 MAX"). Comair entered into a Purchase Agreement with Boeing for eight 737 MAXs in September 2013. In October 2018, Lion Air Flight 610, a 737 MAX, crashed. Boeing assured the public that the 737 MAX was "as safe as any aircraft in the sky." Comair accepted delivery of its first 737 MAX on February 26, 2019. The rest were to be delivered over the next few years. In March 2019, a second 737 MAX, Ethiopian Airlines Flight 302, crashed. After this second crash, the 737 MAX was grounded by the FAA and Boeing acknowledged defects in the 737 MAX. The delivery of remaining 737 MAX planes to Comair was suspended. In February 2020,

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS – 1

Comair attempted to terminate the 2013 Purchase Agreement. In May 2020, Comair "file[d] a business rescue proceeding in South Africa"—essentially declaring bankruptcy. Dkt. #1 at 53. Seeking to hold Boeing responsible, Comair has sued Boeing for its losses.

The 76-page Complaint brings the following causes of action against Boeing and unnamed Doe Defendants:

1. Breach of Contract;
2. Breach of the Duty of Good Faith and Fair Dealing;
3. Fraud in the Inducement;
4. Fraudulent Concealment;
5. Fraudulent Misrepresentation;
6. Negligent Misrepresentation.

*See generally* Dkt. #1. In the instant Motion, Boeing only seeks dismissal of causes of action 3 through 6 and cause of action 2 with respect to all Defendants other than Boeing. Comair's other claims are not addressed. Having considered the issues, the Court generally finds in favor of Comair but will dismiss one claim as set forth below.

## II.      BACKGROUND

The following facts are taken from the Complaint and considered true for purposes of the instant Motion. The Court need not recite all alleged facts and will focus only on those necessary for ruling on the instant Motion.

Comair is a South African commercial airline company. It operated airline services for British Airways and Kulula.com. Since roughly 2003 Comair maintained an all-Boeing fleet.

On January 29, 2010, Boeing and Comair entered into an Aircraft General Terms Agreement ("AGTA"). The purpose of the AGTA was to set forth the parties' general contract

terms that would be incorporated by reference into the parties' separate, subsequent purchase agreements for Boeing aircraft.

In September 2013, Comair and Boeing signed a Purchase Agreement for eight 737 MAX aircraft. The Purchase Agreement incorporated the earlier general terms of the AGTA plus various "Letter Agreements." Comair pleads that Boeing also issued a "Letter of Comfort" that "allowed Comair to terminate the Purchase Agreement within 24 months of delivery of its first 737 MAX and receive a return of its 1% deposit against the purchase agreement price." Dkt. #1 at ¶ 145. This Letter of Comfort allowed Comair to cancel the purchase by January 2017, in other words "within 24 months of delivery of the first 737 MAX due in January 2019." *Id*. at ¶ 155. Comair does not attach the "Letter of Comfort" to the Complaint, quote any of its terms, identify the date when it was issued, or plead the facts of offer and acceptance.

Boeing's agreement to sell 737 MAX aircraft to Comair was publicly announced on March 19, 2014. On February 26, 2019—four months after the Lion Air Flight 610 crash—"Comair proudly accepted delivery of its first 737 MAX 8 from Boeing." *Id*. at ¶ 176. Under the terms of the Purchase Agreement, the second airplane was to be delivered in 2019, the third in 2020, the fourth in 2021, the fifth and sixth in 2022, the seventh in 2023, and the eighth in 2024. Following the crash of Ethiopian Airlines Flight 302, "Boeing suspended all 737 MAX deliveries, including the seven remaining aircraft" that Comair had purchased. *Id*. at ¶ 191. In February 2020, Comair unilaterally purported to terminate the 2013 Purchase Agreement. *Id*. at ¶ 233. The parties disagree about the scope and lawfulness of Comair's termination, but Boeing agreed to cancel the second and third 737 MAX deliveries. *See id*. at ¶ 235. In February 2021, Comair rejected Boeing's attempts to deliver the fourth 737 MAX. *Id*.

In May 2020, Comair "file[d] a business rescue proceeding in South Africa." *Id*. at ¶ 234. On February 3, 2021, Comair filed a Verified Chapter 15 Petition for Recognition of a Foreign

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS – 3

1  Main Proceeding in the U.S. Bankruptcy Court for the Southern District of New York. *Id*. at ¶

2  236; *see also In re Comair Limited (In Business Rescue)*, Case No. 21-10298-JLG (Bankr.

3  S.D.N.Y.). Comair ceased to operate in June 2022 and is now "in provisional liquidation and is

4  being administered by the joint provisional liquidators." *Id*. at ¶ 234.

5      The instant lawsuit was brought on February 6, 2023.

6  ### III.     DISCUSSION

7  **A. Legal Standard**

8      Dismissal under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a

9  cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

10 *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also* FED. R. CIV. P.

11 8(a)(2). While considering a Rule 12(b)(6) motion, the court accepts all facts alleged in the

12 complaint as true and makes all inferences in the light most favorable to the non-moving party.

13 *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted).

14 The court is not required, however, to accept as true a "legal conclusion couched as a factual

15 allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

16 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief

17 will . . . be a context-specific task that requires the reviewing court to draw on its judicial

18 experience and common sense." *Id.* at 679 (citations omitted).

19     "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

20 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting

21 *Twombly*, 550 U.S. at 570). This requirement is met when the plaintiff "pleads factual content

22 that allows the court to draw the reasonable inference that the defendant is liable for the

23 misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). The complaint need not include

24 detailed allegations, but it must have "more than labels and conclusions, and a formulaic

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS – 4

1  recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "The
2  plausibility standard is not akin to a probability requirement, but it asks for more than a sheer
3  possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are
4  merely consistent with a defendant's liability, it stops short of the line between possibility and
5  plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556,
6  557).  Absent facial plausibility, a plaintiff's claims must be dismissed.

7  **B.  Fraud and Negligent Misrepresentation Claims (Claims 3 through 6)**

8  Boeing asserts that claims three through six "rely on virtually the same set of allegations"
9  and can therefore be addressed together.  Dkt. #25 at 14 n.6.  The Court generally agrees.

10  Comair's third through fifth causes of action assert that Boeing acted fraudulently in
11  omitting and/or misrepresenting material facts related to the 737 MAX's similarity to recent
12  iterations of Boeing's 737 aircraft, the need for substantial pilot training on the 737 MAX, and
13  the existence and operation of the MCAS system and the dangers posed by the system.  Comair's
14  sixth claim asserts Boeing negligently misrepresented such facts.  This Court has previously
15  considered the propriety of such claims in the context of Boeing's actions as they relate to the
16  737 MAX and MCAS.  *See Wilmington Tr. Co. v. The Boeing Co.*, Case No. 20-cv-402-RSM,
17  2021 WL 754030 (W.D. Wash. Feb. 26, 2021); *Polskie Linie Lotnicze LOT S.A. v. The Boeing
18  Co.*, Case No. 21-cv-1449-RSM Dkt. #39 (Sep. 30, 2022).  In *Wilmington*, this Court determined
19  that the similarities between the claims meant that they could be considered together, that both
20  claims should be subjected to Rule 9(b)'s heightened pleading standard, and that both claims
21  could proceed on the basis that Boeing had omitted, either fraudulently or negligently, material
22  facts.  2021 WL 754030 at *4–6.  Boeing maintains that the same result is not appropriate here
23  because Comair cannot point to any misrepresentations or omissions prior to the date it entered
24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS – 5

its contracts with Boeing in 2013. Boeing favorably cites *Smartwings, a.s. v. Boeing Co.*, No. C21-918 RSM, 2022 WL 6747997, at *2 (W.D. Wash. October 11, 2022). Dkt. #25 at 17.

In response, Comair argues:

> Comair's complaint here is different, so the result should be different as well. Boeing selectively cites only those allegations that are arguably similar to those the Court rejected in *Smartwings* as "too general" and "puffery." Mot. at 9:24–10:6. But it wholesale ignores the additional and more detailed allegations in Comair's complaint that refer to representations by specific Boeing representatives to specific Comair representatives in late 2012 and 2013, *before* Comair signed the Purchase Agreement in September 2013 (two months after Smartwings did). Compl. ¶¶ 12–13, 129–131, 133–37. Boeing's argument therefore does not follow.

Dkt. #36 at 20 (emphasis in original).

The Court agrees with Comair. The Complaint alleges that Boeing made the following representations prior to September 18, 2013:

a. The 737 MAX would retain the basic design and "unparalleled" safety record of the 737 NG, the 737's previous version;
b. Pilots qualified to fly the 737 NG would need only minimal transition training for the 737 MAX;
c. The commonality between the 737 NG and 737 MAX was so significant there was no requirement for a new 737 MAX simulator;
d. The 737 MAX Aircraft would not require pilot training in a simulator; and
e. The training to transition pilots from the 737 NG to the 737 MAX would be one day of Level B training, which is computer-based training or classroom instruction;

and "knew or should have known the [foregoing] statements were false." *Id.* at ¶¶ 265, 270. These details satisfy Rule 9(b)'s heightened pleading standard for fraud. The knowledge of their falsity is plausibly plead given the allegations in paragraphs 64–70 of the Complaint.

Later, Comair argues that Boeing represented that the 737 MAX was "a variant of the safe, reliable, and time-tested 737 family of aircraft," with "new fuel-efficient engines," "very deliberate" design enhancements that posed "minimal risk," and that required "nominal pilot

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS – 6

training to safely operate." *Id*. at ¶ 284.  The Court agrees with Boeing that *these* statements are too general to support fraudulent inducement or omission claims under Rule 9(b).  Rather, the statements are akin to "general praise of goods sold known as sales talk or puffing."  *See Baughn v. Honda Motor Co.*, 107 Wn.2d 127, 150, 727 P.2d 655, 668 (1986)).  If this was all that Comair had to support its fraud and negligent misrepresentation claims, it would have a problem.

Comair also pleads that Boeing represented that the 737 MAX was accurately described in the Detail Specification, which was part of the parties' AGTA and Purchase Agreement, but that the Detail Specification made no mention of MCAS. Dkt. #1 at ¶ 288.  This supports a claim of fraudulent omission with specificity.

The Court finds that the pre-contract facts are sufficient to bring these claims.  This is not a basis to dismiss claims three through six.

Focusing on claim six, Boeing argues that Washington law does not recognize pre-contract negligent misrepresentation based on promises of future performance.  Dkt. #25 at 20-21.  Comair responds to this in a footnote, stating "[n]o one disputes that a mere opinion about possible future events would not be actionable, but that is not what the allegations here describe." Dkt. #36 at 23 n.2.

There is no need for Comair to be coy. The Court would prefer Comair to respond in greater detail to Boeing's argument.  However, the Court agrees with Comair that the lengthy and detailed allegations in the Complaint are sufficient.  The Washington Supreme Court has held that "a promise of future performance is . . . not an actionable statement" for purposes of "a negligent misrepresentation claim." *Glacier Nw., Inc. v. Int'l Bd. Of Teamsters Loc. Union No. 174*, 500 P.3d 119, 136 (Wash. 2021) (citing *Havens v. C & D Plastics, Inc.*, 876 P.2d 435, 448 (Wash. 1994)).  Instead, a plaintiff must plausibly allege a "false representation as to a presently existing fact." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1219

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS – 7

(Wash. Ct. App. 2002).  Comair has plausibly alleged many false representations based on presently existing facts as to the development of the 737 MAX, even though the delivery would occur years later.  This was a complex transaction.  It is not entirely clear, at the pleading stage, which allegations of representations can be considered "presently existing facts" as opposed to "promises of future performance," and the Court declines to reach a final ruling now on this distinction.  Although these claims are plausible, with further development of the factual record it is possible that this claim may not survive summary judgment.

### C. Claims based on Post-Contractual Misrepresentations or Omissions

Boeing next argues that Comair's claims of fraud or negligent misrepresentation should fail to the extent they arise out of Boeing's alleged misrepresentations or omissions to Comair *after* the parties entered into the Purchase Agreement in September 2013.  Dkt. #25 at 21.

Comair responds that this Court has previously allowed post-contractual fraud and misrepresentations claims to survive a motion to dismiss in a case brought by another 737 MAX Plaintiff, Smartwings, *see* Case No. C21-918RSM, Dkt. #37 at 13–14, as well as with another 737 MAX Plaintiff, Timaero. Dkt. #36 at 25–26.  Boeing replies that it "recognizes this Court's prior finding that 737 MAX customers can state fraud and misrepresentation claims based on Boeing's alleged misrepresentations and omissions in and after 2016," citing the Smartwings and Timearo cases, but argues that "unlike the plaintiffs in those cases, Comair cannot plausibly allege that it detrimentally relied on Boeing's alleged post-contractual misrepresentations and omissions." Dkt. #42 at 14.  Boeing asserts that Comair's detrimental reliance allegations rely on a phantasmal "letter of comfort" and otherwise lack particularity. *Id*. at 14–16.

As with prior cases, this Court declines to gives a thumbs up or thumbs down to individual misrepresentations at this early stage.  Boeing has failed to articulate a satisfactory legal basis for dismissing allegations of fraud or negligent misrepresentation based on statements made after

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS – 8

initial contracts were signed given the plausible ongoing nature of the relationship between the parties and their contractual obligations, with or without a letter of comfort. This issue is best raised again at the summary judgment stage once the factual record has been adequately developed.

### D. Claim for Breach of an Implied Covenant of Good Faith and Fair Dealing as brought against Doe Defendants

Comair alleges in a single sentence that Boeing breached the covenant of good faith and fair dealing implied in the parties' AGTA, Purchase Agreement, and Letter Agreements. *See* Dkt. #1 at ¶ 253. Because Boeing and Comair are the only parties to these agreements, Boeing argues that this claim cannot be brought against the Doe Defendants. Dkt. #25 at 28. Comair does not dispute this. *See* Dkt. #36 at 15. The Court agrees. This claim will be dismissed as to Doe Defendants.

### IV.   CONCLUSION

Having reviewed the Motion, the relevant briefing, and the remainder of the record, the Court hereby finds and ORDERS that Defendant Boeing's Motion to Dismiss (Dkt. #25) is GRANTED in part and DENIED in part as set forth in this Order. Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, against the Doe Defendants is DISMISSED. All other claims remain.

DATED this 25th day of September, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE